# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO:** 19- _____ |
| **v.** | : | **DATE FILED:** _____ |
| **STEPHEN SHARKEY,** a/k/a Stephen Leahan, a/k/a Michael Simmons | : : : : : : : | **VIOLATIONS:** 18 U.S.C. § 1349 (conspiracy to commit wire fraud – 2 counts) 18 U.S.C. § 1343 (wire fraud – 8 counts) 18 U.S.C. § 1028A (aggravated identity theft – 1 count) 18 U.S.C. § 1957 (money laundering – 1 count) 18 U.S.C. § 2 (aiding and abetting) **Notices of Forfeiture** |

## INDICTMENT

### COUNT ONE
#### (Conspiracy to Commit Wire Fraud)

**THE GRAND JURY CHARGES THAT:**

At all times material to Count One of this indictment:

1.     Defendant STEPHEN SHARKEY purported to be a mortgage broker who could arrange financing for real estate transactions.

2.     Defendant STEPHEN SHARKEY used an alias of "Stephen Leahan" to deceive B.M., who was the victim of the conspiracy, as to defendant SHARKEY's true identity.

3.     Defendant STEPHEN SHARKEY controlled a bank account at TD Bank in the name of NJA Abstract LLC, with an account number ending in 9568.

4.     Defendant STEPHEN SHARKEY controlled a bank account at TD Bank in the name of Core Settlement Services, with an account number ending in 2190.

5.     A.A. worked in the mortgage industry and was an associate of defendant STEPHEN SHARKEY.

6.     B.M. was a relative of A.A. and sought to purchase a property in Freehold, New Jersey (the "Freehold Property").

### THE CONSPIRACY

7.     From in or about June, 2017, through at least in or about April, 2018, in the Eastern District of Pennsylvania, the District of New Jersey, and elsewhere, defendant

### STEPHEN SHARKEY

and A.A. conspired and agreed together to knowingly devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations and promises, in violation of Title 18, United States Code, Section 1343.

### MANNER AND MEANS

It was a part of the conspiracy that:

2

8.    Defendant STEPHEN SHARKEY and A.A. obtained money from B.M., who was seeking to purchase the Freehold Property, by representing to B.M. that the funds B.M. advanced to defendant SHARKEY before the closing would be used to obtain financing to assist B.M. in buying real estate, when in fact defendant SHARKEY and A.A. intended to convert those advanced funds for their personal use.

9.    Defendant STEPHEN SHARKEY and A.A. made materially false statements and omitted material facts to mislead B.M. into believing that defendant SHARKEY was a legitimate mortgage broker and had participated as a mortgage broker in many real estate transactions.

10.    Defendant STEPHEN SHARKEY made materially false statements and omitted material facts to induce B.M. to advance funds and mislead B.M. into believing that defendant SHARKEY would use the advanced funds in order to obtain financing on behalf of B.M. so that B.M. could purchase the Freehold Property.

11.    Despite representing that he would arrange financing for a purchase of the Freehold Property, defendant STEPHEN SHARKEY did not arrange financing on behalf of B.M.

12.    Defendant STEPHEN SHARKEY and A.A. engaged in financial transactions to transfer or otherwise convert to their own use the funds advanced by B.M.

13.     Defendant STEPHEN SHARKEY falsely represented to B.M. that he would cause the advanced funds, along with additional financing arranged by defendant SHARKEY, to be transferred to fund the purchase of the Freehold Property at the time of closing, although defendant SHARKEY well knew that before the date set for closing, defendant SHARKEY and A.A. had converted a substantial portion of the advanced funds to their own use.

14.     After failing to provide financing for the closing on the Freehold Property in June 2017, defendant STEPHEN SHARKEY and A.A. offered false excuses to B.M. to explain why the financing had not been provided.

15.     Defendant STEPHEN SHARKEY and A.A. also made false statements to B.M. to explain why defendant SHARKEY and A.A. were unable to return the advanced funds to B.M.

16.     Defendant STEPHEN SHARKEY used telephone number 267-368-0114 to communicate with B.M. during the course of the conspiracy.

17.     Defendant STEPHEN SHARKEY and A.A. misrepresented, concealed and hid, caused to be misrepresented, concealed and hidden, and attempted to misrepresent, conceal and hide the actions done in furtherance of the conspiracy.

## OVERT ACTS

In furtherance of the conspiracy, defendant STEPHEN SHARKEY and A.A. committed the following overt acts in the Eastern District of Pennsylvania, and elsewhere:

4

1.     In or about June 2017, defendant STEPHEN SHARKEY, using the alias "Stephen Leahan," told B.M. that defendant SHARKEY's company, NJA Abstract, would finance a mortgage for B.M. Defendant SHARKEY told B.M. that B.M. needed to wire $208,000 to NJA Abstract before the closing because, in handling the closing, defendant SHARKEY's company needed the money as collateral or leverage on a hedge fund account that would be used to finance the deal.

2.     After receiving the $208,000 wire from B.M. on June 27, 2017, that same day defendant STEPHEN SHARKEY withdrew approximately $155,794 from the NJA Abstract account ending in 9568 and converted those funds into three official bank checks, two of which were payable to A.I. LLC, and one of which was payable to defendant SHARKEY.

3.     On June 29, 2017, defendant STEPHEN SHARKEY withdrew $12,000 from the NJA Abstract account and converted those funds to an official bank check payable to A.I. LLC.

4.     Defendant STEPHEN SHARKEY failed to provide financing for the closing that B.M. and the seller attended on June 30, 2017. As a result, B.M. was unable to purchase the Freehold Property that day.

5.     On or about Monday, July 3, 2017, defendant SHARKEY spoke to B.M. and offered the excuse that there was not much he could do that day because it was a slow day in his office due to the July Fourth holiday, but everything would be taken care of by July 5, 2017.

5

6.      Later in July 2017, A.A. made an arrangement with the seller of the Freehold Property to extend the closing date by a week in exchange for $15,000. The seller agreed that if the sale was completed, the $15,000 would go to the purchase price; if it did not, the seller would keep the $15,000 and re-list the property. Pursuant to this agreement, on or about July 5, 2017, a wire in the amount of $15,000 was sent from the NJA Abstract account ending in 9568 to the account of a law firm representing the seller of the Freehold Property.

7.      On or about July 20, 2017, B.M. received a wire of $18,000 into his Citibank account from the NJA Abstract account ending in 9568. Defendant STEPHEN SHARKEY told B.M. that there was a mistake and that the $18,000 wire should have been sent to A.A. and a separate wire of $208,000, that had been intended for B.M.'s account, had been sent in error to A.A.'s bank account.

8.      On or after July 20, 2017, when B.M. contacted A.A. and asked A.A. to wire the $208,000 to B.M.'s account, A.A. told B.M. that A.A. was in receipt of the $208,000 wire, however, there would be a delay in accessing the money due to a one-day hold on A.A.'s account. Approximately one week later, A.A. told B.M. that A.A. could not forward the $208,000 to B.M. because the IRS had placed a $100,000 lien on his account. B.M. asked A.A. for proof that there was an IRS lien on A.A.'s account, but A.A. never provided any proof.

9.      In early August 2017, defendant STEPHEN SHARKEY and A.A. met B.M. at a gas station in Staten Island, New York. During the meeting in Staten Island, defendant SHARKEY gave B.M. three checks, one for $20,000 dated August

6

3rd, one for $50,000 dated August 4th, and one for $105,000 dated August 10th. The checks were drawn on the Core Settlement Services TD Bank account ending in 2190 but when B.M. attempted to deposit one of the checks, it was returned.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS TWO AND THREE
### (Wire Fraud)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.     Paragraphs 1 through 6 of Count One are incorporated here.

### THE SCHEME

2.     From in or about June, 2017 through at least in or about April, 2018, in the Eastern District of Pennsylvania, the District of New Jersey, and elsewhere, defendant

### STEPHEN SHARKEY

devised and intended to devise a scheme to defraud and to obtain money and property by means of false and fraudulent pretenses, representations and promises.

### MANNER AND MEANS

3.     Paragraphs 8 through 17 of Count One are incorporated here.

4.     On or about each of the dates set forth below, in the Eastern District of Pennsylvania and elsewhere, defendant

### STEPHEN SHARKEY

for the purpose of executing the scheme described above, caused to be transmitted by means of wire communication in interstate commerce the signals and

sounds described below for each count, each transmission constituting a separate count:

| COUNT | DATE | DESCRIPTION |
|---|---|---|
| Two | June 27, 2017 | Electronic image transmitted by TD Bank from a branch in Philadelphia to Mt. Laurel, New Jersey resulting from the withdrawal of $155,794 from the NJA Abstract account ending in 9568 |
| Three | June 29, 2017 | Electronic image transmitted by TD Bank from a branch in Philadelphia to Mt. Laurel, New Jersey resulting from the withdrawal of $12,000 from the NJA Abstract account ending in 9568 |

All in violation of Title 18, United States Code, Sections 1343, and 2.

## COUNTS FOUR THROUGH SIX
### (Wire Fraud)

**THE GRAND JURY FURTHER CHARGES THAT:**

At times material to Counts Four through Six of this indictment:

1.    The estate of J.K.'s mother owned the K. family residence in Philadelphia (the "Estate Property") and that residence was an asset that J.K. intended to sell in order to close the estate and provide inheritance to J.K. and J.K.'s sister.

2.    Defendant STEPHEN SHARKEY controlled a bank account at TD Bank in the name of Core Settlement Services, with an account number ending in 2190.

### THE SCHEME

3.    From no later than August 2017 through in or about January 2018, defendant

### STEPHEN SHARKEY

devised and intended to devise a scheme to defraud and to obtain money and property by means of false and fraudulent pretenses, representations and promises.

### MANNER AND MEANS

It was part of the scheme that:

4.    Defendant STEPHEN SHARKEY falsely represented to J.K. that defendant SHARKEY would represent J.K. in connection with the sale of the Estate Property, when in fact defendant SHARKEY intended to and did secretly

10

conduct the closing for the sale of the Estate Property without informing J.K. and took the proceeds of the sale for his own use without informing J.K.

5.   On or about August 30, 2017, defendant STEPHEN SHARKEY and J.K. met in-person at the Estate Property and signed an agreement of sale for the Estate Property.

6.   In order to obtain the documents necessary to close the sale of the Estate Property without J.K.'s knowledge, defendant STEPHEN SHARKEY, acting under the false pretense that he would arrange the sale for J.K., induced J.K. to sign certain documents, including a deed of sale of the Estate Property, by making false statements about the purpose of signing the documents, and failing to advise J.K. that one of the documents J.K was signing was in fact a deed. Defendant SHARKEY also hid from J.K. the fact that SHARKEY intended to use the deed that J.K. had signed to close the sale of the Estate Property without J.K. present.

7.   On or about October 5, 2017, defendant STEPHEN SHARKEY and J.K. met in King of Prussia, Pennsylvania and defendant SHARKEY deceived J.K., causing J.K. to sign a deed conveying the Estate Property to a buyer named in the deed.

8.   On or about October 6, 2017, the closing took place in Feasterville, Pennsylvania, without J.K.'s knowledge. At the closing, defendant STEPHEN SHARKEY received a check written to the estate of J.K.'s deceased mother in the amount of $22,829.21, and two checks made payable to defendant SHARKEY in the amounts of $30,000 and $19,000.

9.    On or about October 23, 2017, defendant STEPHEN SHARKEY deposited the check written to the estate of J.K.'s deceased mother in the amount of $22,829.21, into the TD Bank Account ending in number 2190.

10.    On October 24, 2017, at the TD Bank branch located at 2653 South 5th Street in Philadelphia, defendant STEPHEN SHARKEY withdrew $11,000 from the TD Bank Account ending in number 2190. A portion of these funds were used to purchase a bank check payable to A.I. LLC, and a portion were withdrawn as cash.

11.    On October 25, 2017, at the TD Bank branch located at 2653 South 5th Street in Philadelphia, defendant STEPHEN SHARKEY withdrew $2,400 from the TD Bank Account ending in number 2190.

12.    After obtaining the proceeds of the sale of the Estate Property and converting those funds to his own use, defendant STEPHEN SHARKEY continued to communicate with J.K. about a future closing date. Defendant SHARKEY made materially false statements and omitted material facts to mislead J.K. into believing that defendant SHARKEY was attempting to schedule a closing for the Estate Property, all occurring after defendant SHARKEY had attended the actual closing and converted most of the proceeds to his own use.

13.    During the execution of the scheme, defendant STEPHEN SHARKEY used telephone numbers 267-368-0114, 267-290-7988, and 267-602-1401, to communicate with J.K.

14.    Defendant STEPHEN SHARKEY misrepresented, concealed

12

and hid, caused to be misrepresented, concealed and hidden, and attempted to misrepresent, conceal and hide the actions done in furtherance of the scheme.

15.     On or about each of the dates set forth below, in the Eastern District of Pennsylvania and elsewhere, defendant

**STEPHEN SHARKEY**

for the purpose of executing the scheme described above, caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described below for each count, each transmission constituting a separate count:

| COUNT | DATE | DESCRIPTION |
|---|---|---|
| Four | October 23, 2017 | Electronic image transmitted by TD Bank from a branch in Philadelphia to Mt. Laurel, New Jersey resulting from the deposit of a check in the amount of $22,829.21 into a TD Bank account ending in 2190 |
| Five | October 24, 2017 | Electronic image transmitted by TD Bank from a branch in Philadelphia to Mt. Laurel, New Jersey resulting from the withdrawal of $11,000 from a TD Bank account ending in 2190 |
| Six | October 25, 2017 | Electronic image transmitted by TD Bank from a branch in Philadelphia to Mt. Laurel, New Jersey resulting from the withdrawal of $2,400 from a TD Bank account ending in 2190 |

All in violation of Title 18, United States Code, Section 1343.

## COUNT SEVEN

### (Aggravated Identity Theft)

**THE GRAND JURY FURTHER CHARGES THAT:**

1. Paragraphs 1 through 16 of Counts Four through Six are incorporated here.

2. On or about October 6, 2017, in the Eastern District of Pennsylvania and elsewhere, defendant

### STEPHEN SHARKEY

knowingly possessed and used, without lawful authority, the means of identification of another person, specifically, the name of J.K., during and in relation to wire fraud, knowing that the means of identification belonged to another actual person.

In violation of Title 18, United States Code, Section 1028A(a)(1).

14

## COUNT EIGHT
### (Conspiracy to Commit Wire Fraud)

**THE GRAND JURY FURTHER CHARGES THAT:**

At all times material to Count Eight of this indictment:

1.      Defendant STEPHEN SHARKEY purported to be a mortgage broker who could arrange financing for real estate transactions.

2.      Defendant STEPHEN SHARKEY used an alias of "Michael Simmons" to deceive J.M., who was the victim of the conspiracy, as to SHARKEY's true identity.

3.      Defendant STEPHEN SHARKEY controlled a bank account at TD Bank in the name of Core Settlement Services, with an account number ending in 2190.

4.      A.A. worked in the mortgage industry and was an associate of defendant STEPHEN SHARKEY.

5.      J.M. sought to purchase a residence in Scotrun, Pennsylvania (the "Scotrun Property").

### THE CONSPIRACY

6.      From in or about December, 2017, through at least in or about January, 2018, in the Eastern District of Pennsylvania, and elsewhere, defendant

### STEPHEN SHARKEY

and A.A., conspired and agreed together to knowingly devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent

pretenses, representations and promises, in violation of Title 18, United States Code, Section 1343.

## MANNER AND MEANS

It was a part of the conspiracy that:

7.     Defendant STEPHEN SHARKEY and A.A. obtained money from J.M., who was seeking to purchase the Scotrun Property, by representing to J.M. that the funds J.M. advanced to defendant SHARKEY before the closing would be used to obtain financing to assist J.M. in buying the Scotrun Property, when in fact defendant SHARKEY and A.A. intended to convert those advanced funds for their personal use.

8.     Defendant STEPHEN SHARKEY and A.A. induced J.M. to advance funds by making materially false statements and omitting material facts to mislead J.M. into believing that defendant SHARKEY was a legitimate mortgage broker and had participated as a mortgage broker in many real estate transactions.

9.     Defendant SHARKEY made materially false statements and omitted material facts to mislead J.M. into believing that defendant SHARKEY would use the advanced funds in order to obtain financing on behalf of J.M. so that B.M. could purchase the Scotrun Property.

10.     Defendant STEPHEN SHARKEY falsely represented that he would cause the advanced funds, along with additional financing arranged by defendant SHARKEY, to be used to purchase the Scotrun Property at the time of closing, although defendant SHARKEY well knew that before the date set for

16

closing, defendant SHARKEY and A.A. had converted a substantial portion of the advanced funds to their own use.

11.     Despite representing that he would arrange financing for a proposed real estate transaction, defendant STEPHEN SHARKEY did not arrange financing on behalf of J.M.

12.     Defendant STEPHEN SHARKEY and A.A. engaged in financial transactions to transfer or otherwise convert the advanced funds to their own use.

13.     After failing to provide financing for a real estate closing in January 2018, defendant STEPHEN SHARKEY and A.A. offered false excuses to J.M. to explain why the financing had not been provided.

14.     Defendant STEPHEN SHARKEY and A.A. also made false statements to J.M. to explain why defendant SHARKEY and A.A. were unable to return the advanced funds to J.M.

15.     Defendant STEPHEN SHARKEY used telephone numbers 267-290-7988 and 267-602-1401 to communicate with J.M. during the course of the conspiracy.

16.     Defendant STEPHEN SHARKEY and A.A. misrepresented, concealed and hid, caused to be misrepresented, concealed and hidden, and attempted to misrepresent, conceal and hide the actions done in furtherance of the conspiracy.

## OVERT ACTS

In furtherance of the conspiracy, defendant STEPHEN SHARKEY and A.A.

committed the following overt acts in the Eastern District of Pennsylvania, and elsewhere:

1. In or about December 2017, when J.M. contacted A.A. seeking financing for a real estate transaction, A.A. referred J.M. to a "Michael Simmons" whom A.A. actually knew to be defendant STEPHEN SHARKEY.

2. In or about December 2017, defendant STEPHEN SHARKEY falsely represented to J.M. that Core Settlement Services was a title company that could arrange the closing of J.M.'s purchase of the Scotrun Property, when in fact defendant SHARKEY intended to use Core Settlement Services to receive a wire transfer from J.M. that defendant SHARKEY and A.A. would convert to their own use.

3. In or about December 2017, defendant STEPHEN SHARKEY falsely suggested to J.M. that Core Settlement Services was an independent title company not controlled by defendant SHARKEY.

4. In or about December 2017, defendant STEPHEN SHARKEY falsely stated to J.M. that defendant SHARKEY would obtain financing for J.M.'s purchase of the Scotrun Property.

5. In or about December 2017, defendant STEPHEN SHARKEY falsely stated to J.M. that in order to obtain financing, J.M. needed to wire transfer $100,000 as directed by defendant SHARKEY in advance of closing.

6. On or about December 22, 2017, after J.M. wired $100,000 to the Core Settlement Services TD Bank account ending in 2190, defendant STEPHEN

18

SHARKEY made several withdrawals that same day from the TD Bank account ending in 2190 totaling approximately $70,892. A portion of these funds were used to purchase a bank check payable to A.I. LLC, and a portion were withdrawn as cash. During one of these transactions, defendant SHARKEY obtained an official bank check payable to Stephen Sharkey in the amount of $40,000.

7.     On or about December 22, 2017, defendant STEPHEN SHARKEY cashed the $40,000 official bank check at a check cashing business located in Philadelphia.

8.     When the closing did not occur as scheduled on January 11, 2018, defendant STEPHEN SHARKEY falsely told J.M. that the closing did not occur because the title company did not have the paperwork ready. Around this time, defendant SHARKEY also falsely told J.M. that the closing could not occur because defendant SHARKEY's lawyer had not completed paperwork necessary to the closing.

9.     In January 2018, when J.M. requested that defendant STEPHEN SHARKEY return J.M.'s $100,000 down payment, defendant SHARKEY falsely told J.M. that the $100,000 had been sent to another company, G.S., in order to finance the loan for J.M.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS NINE THROUGH ELEVEN
### (Wire Fraud)

**THE GRAND JURY FURTHER CHARGES THAT:**

1. Paragraphs 1 through 5 of Count Eight are incorporated here.

### THE SCHEME

2. From in or about December 2017 through at least in or about January 2018, in the Eastern District of Pennsylvania, and elsewhere, defendant

### STEPHEN SHARKEY

devised and intended to devise a scheme to defraud and to obtain money and property by means of false and fraudulent pretenses, representations and promises.

### MANNER AND MEANS

3. Paragraphs 7 through 16 of Count Eight are incorporated here.

4. On or about each of the dates set forth below, in the Eastern District of Pennsylvania and elsewhere, defendant

### STEPHEN SHARKEY

for the purpose of executing the scheme described above, caused to be transmitted by means of wire communication in interstate commerce the signals and

sounds described below for each count, each transmission constituting a separate count:

| COUNT | DATE | DESCRIPTION |
|-------|------|-------------|
| Nine | December 22, 2017 | Electronic image transmitted by TD Bank from a branch in Philadelphia to Mt. Laurel, New Jersey resulting from the withdrawal of $62,884 from the Core Settlement Services account ending in 2190 |
| Ten | December 22, 2017 | Electronic image transmitted by TD Bank from a branch in Philadelphia to Mt. Laurel, New Jersey resulting from the withdrawal of $7,008 from the Core Settlement Services account ending in 2190 |
| Eleven | December 22, 2017 | Electronic image transmitted by TD Bank from a branch in Philadelphia to Mt. Laurel, New Jersey resulting from the withdrawal of $1,000 from the Core Settlement Services account ending in 2190 |

All in violation of Title 18, United States Code, Sections 1343, and 2.

## COUNT TWELVE
### (Money Laundering)

**THE GRAND JURY FURTHER CHARGES THAT**:

      1.    Paragraphs 1 through 3 of Counts 9 through 11 of this Indictment are incorporated here.

      2.    On or about December 22, 2017, in the Eastern District of Pennsylvania and elsewhere, defendant

### STEPHEN SHARKEY

knowingly engaged in and willfully caused a monetary transaction affecting interstate commerce in criminally derived property of a value greater than $10,000, that is the issuance of an official bank check using funds in the TD Bank account of Core Settlement Services, and such property was derived from a specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343.

      All in violation of Title 18, United States Code, Section 1957.

## NOTICE OF FORFEITURE

**THE GRAND JURY FURTHER CHARGES THAT:**

      1.    As a result of the violations of Title 18, United States Code, Section 1343 and 1349, in Counts 1-6 and 9-11 of this indictment, defendant

### STEPHEN SHARKEY

shall forfeit to the United States of America any property that constitutes, or is derived from, proceeds traceable to the commission of such offenses, including, but not limited to, the sum of $379,829.21

      2.    If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

      (a)    cannot be located upon the exercise of due diligence;

      (b)    has been transferred or sold to, or deposited with, a third party;

      (c)    has been placed beyond the jurisdiction of the Court;

      (d)    has been substantially diminished in value; or

      (e)    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property subject to forfeiture.

All pursuant to Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)(C).

## NOTICE OF FORFEITURE NO. 2

**THE GRAND JURY FURTHER CHARGES THAT:**

1.    As a result of the violation of Title 18, United States Code, Section 1957 set forth in Count 12 of this indictment, defendant

**STEPHEN SHARKEY**

shall forfeit to the United States of America any property, real or personal, involved in such violation, and any property traceable to such property, including, but not limited to, the sum of $40,000.

2.    If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

cannot be located upon the exercise of due diligence;

has been transferred or sold to, or deposited with, a third party;

has been placed beyond the jurisdiction of the Court;

has been substantially diminished in value; or

has been commingled with other property which cannot be

divided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property subject to forfeiture.

All pursuant to Title 18, United States Code, Section 982.

A TRUE BILL:

_____

GRAND JURY FOREPERSON

for WILLIAM M. McSWAIN
United States Attorney